**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: RECALLED ABBOTT** | ) | |
| **INFANT FORMULA PRODUCTS** | ) | **Case No. 23 C 338** |
| **LIABILITY LITIGATION** | ) | |
| ---------------------------------------------------- | ) | |
| **This document relates to:** | ) | |
| **Willoughby v. Abbott Labs.,** | ) | |
| **Case No. 22 C 1322** | ) | |

**CASE MANAGEMENT ORDER NO. 1
(Memorandum Opinion and Order on
Motions to Dismiss *Willoughby* Complaint)**

MATTHEW F. KENNELLY, District Judge:

Eight plaintiffs—Charlotte Willoughby, Lakendrea Camille McNealy, Shaylynn

Doxie, Brittney Gray, Kataleena Helmick, Lani Holloway, Ashley Popa, and Deniege

Revord—filed suit against Abbott Laboratories. Abbott manufactures and distributes

Similac brand infant formula products. The plaintiffs (which the Court will collectively

call Willoughby) allege that the products contain heavy metals and were manufactured

in unsanitary conditions, both of which were not disclosed in the labeling. On January

23, 2023, the Executive Committee transferred this case to the Court under IOP 13(e)

for pretrial coordination purposes due to its overlap with the consumer class action

complaints in MDL 3037, *In re Recalled Abbott Infant Formula Products Liability

Litigation*, Case No. 22 C 4148.

In her consolidated amended complaint, Willoughby asserts claims on behalf of a

nationwide class and eight state classes for violations of state consumer fraud acts,

common law fraud, unjust enrichment, and breach of the implied warranty of

merchantability. Abbott has moved to dismiss all the claims under Federal Rule of Civil

Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim.  On May 1, 2023, the Court held a hearing on Abbott's motion.  For the reasons stated below, the Court overrules Abbott's lack-of-standing argument, dismisses certain of Willoughby's claims for failure to state a claim, and otherwise denies Abbott's motion.

**Background**

Abbott is a leading supplier of infant formula in the United States.  It sells its formula to consumers on its website and to major retailers who in turn sell it to consumers.  Willoughby purchased Abbott's Similac brand powdered infant formula products.  She has brought this putative class action on behalf of all purchasers from March 1, 2016 to the present.

Willoughby alleges that recent testing on five types of Similac infant formula products "confirmed the presence of Heavy Metals" in each product type tested, including 2.0 parts per billion (ppb) of lead, 11.4 ppb of cadmium, 10.1 ppb of mercury, and levels of arsenic ranging from 4.6 ppb to 9.7 ppb.  Consol. Am. Compl. ¶¶ 19, 160.  Independent testing reported the presence of arsenic and lead in another Similac formula product.  The consolidated amended complaint also identifies several investigation reports and studies confirming the presence of heavy metals in baby foods.

Willoughby further alleges that "[t]here is no safe level of heavy metals" and that even low levels of heavy metals "cause serious and often irreversible damage to brain development."  *Id.* ¶¶ 22, 87.  Heavy metals "accumulate in the body, including in the kidneys and other internal organs," such that "the risk they pose grows over time and can remain in one's body for years."  *Id.* ¶ 74.  "[E]ven regular consumption of small

amounts can increase the material risk of various health issues, including the material risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes." *Id.* ¶ 78. The FDA has prioritized reducing exposure to arsenic, cadmium, lead, and mercury "in connection with its Toxic Elements Working Group." *Id.* ¶ 106.

Abbott does not disclose that its products "contained or had a material risk of containing" heavy metals. *Id.* ¶ 3. Willoughby alleges that consumer surveys show that reasonable consumers do not expect heavy metals to be present in Abbott's infant formula after seeing the products' labeling.

Willoughby also alleges that Abbott's infant formula was "manufactured in unsanitary conditions and with a lack of quality control." *Id.* ¶ 68. The consolidated amended complaint refers to the FDA's conclusion that its inspections of the Sturgis, Michigan facility "showed 'egregious unsanitary' conditions like cracks in key equipment that allowed bacteria to enter, a leaking roof and water collecting on the floor." *Id.* ¶ 66. Abbott also does not disclose that its products "lack . . . proper manufacturing controls" or have a "material risk of contamination." *Id.* ¶ 69.

Willoughby alleges that she "would not have purchased" or "would not have paid the price premium" for Abbott's infant formula had she known that the products were "manufactured in 'egregiously unsanitary' conditions without proper quality control procedures and contained (or had a material risk of containing) Heavy Metals." *Id.* ¶ 427.

## Discussion

Willoughby asserts claims for violations of state consumer fraud acts, common law fraud, unjust enrichment, and breach of the implied warranty of merchantability.

3

Abbott has moved to dismiss the claims for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

In deciding a motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Because Article III standing is a necessary component of federal jurisdiction, the Court addresses it first. *See Kithongo v. Garland*, 33 F.4th 451, 454 (7th Cir. 2022) ("The 'first and fundamental question' [the] court must answer 'is that of jurisdiction.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))).

## A.     Standing

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). Only the first element is relevant here, which is that the plaintiff must have suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha*, 807 F.3d at 173.

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Id.* There are "two forms of standing challenges." *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022). "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true. A factual challenge, by contrast, asserts that there is *in fact* no standing." *Id.* (citation omitted). In this case, Abbott brings a facial challenge to standing, asserting that Willoughby failed to plead any economic injury.

"[I]n evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: 'Courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Silha*, 807 F.3d at 173 (alterations accepted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174; *see also Reinoehl v. Centers for Disease Control & Prevention*, No. 22-1401, 2022 WL 14461946, at *3 (7th Cir. Oct. 25, 2022) ("At the pleading stage, standing is evaluated under the same analysis used to review whether a complaint adequately states a claim.") (internal quotation marks omitted).

For both the unsanitary conditions and heavy metals claims, Willoughby contends that she suffered an economic injury from a loss of the benefit of the bargain. The Court addresses each theory in turn.

5

### 1. Unsanitary conditions

Willoughby cites *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019), for the proposition that "economic loss resulting from a price premium paid by a consumer is a well-recognized actual injury that satisfies Article III standing." Pls.' Resp. Br. at 7. But Abbott does not contest that a loss of the benefit of the bargain can be a cognizable injury. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."); *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022) ("This court has repeatedly recognized overpayment as a cognizable form of Article III injury."); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018) ("Under the benefit of the bargain theory, a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value.").

Rather, Abbott contends that the plaintiffs have not lost the benefit of the bargain in this case because the plaintiffs have not plausibly alleged that the products they purchased were defective. Although Willoughby focuses on Abbott's omission of "its unsanitary manufacturing practices," she contends that she did not receive the benefit of the bargain because "they did not receive the Products' value and benefits which they were promised (*i.e.*, nutritious infant formula with superior ingredients)." Pls.' Resp. Br. at 8–9. Willoughby does not allege that the products did not contain the ingredients or the nutritional value that she expected. Rather, she contends that the alleged

unsanitary conditions identified in the complaint resulted in a "material risk of contamination." Consol. Am. Compl. ¶ 16.

*Aqua Dots*, upon which Willoughby relies, does not address this sort of allegation. In that case, the plaintiffs alleged a uniform defect in every product. Because every product was alleged to be defective, the plaintiffs did not also have to allege that the defect manifested in physical injury to have standing. *See Aqua Dots*, 654 F.3d at 751 (holding that, where a manufacturer sold a toy with adhesive that posed a hazard to children if ingested, the plaintiffs did not have to allege that their children were physically injured to have standing); *see also Evenflo*, 54 F.4th at 33–35 (holding that, where a manufacturer sold a car seat that was not designed or tested to function as advertised, the plaintiffs did not have to allege that any plaintiffs suffered physical or emotional harm). As the Fifth Circuit has explained, a uniform defect can cause financial injury because "each plaintiff suffered economic injury at the moment she purchased a [product] because each [product] was defective." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007).

In this case, however, Willoughby does not allege that every Abbott product of the type at issue was contaminated with harmful bacteria. Nor does she allege that the products she and the other plaintiffs purchased were contaminated. *See, e.g.*, Consol. Am. Compl. ¶ 16 ("Nowhere on the Infant Formulas' packaging is the lack of proper manufacturing controls or *material risk of contamination* from failing to ensure safe manufacturing processes disclosed.") (emphasis added). In these circumstances, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014), is instructive. Like Willoughby, the plaintiffs in that case contended that they were "not required to

allege the *specific products or packages*" that were defective. *Id.* The Eighth Circuit rejected that proposition, holding that "[w]ithout any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue ConAgra." *Id.* Other circuits addressing allegations of non-uniform or speculative defects are in accord. *See Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1305 (10th Cir. 2022) ("[A]rguing that they purchased dog food that was at risk of contamination—unlike arguing that they purchased dog food that was contaminated—is insufficient for standing because an alleged injury cannot be 'too speculative for Article III purposes.'") (quoting *Lujan*, 504 U.S. at 564 n.2); *Johnson & Johnson*, 903 F.3d at 289 ("Although Estrada contends that Baby Powder is 'unsafe,' her own allegations require us to conclude that the powder she received was, in fact, *safe as to her*.").

Willoughby contends that her allegations are analogous to those the Court found sufficient in *Barnes v. Unilever U.S. Inc.*, No. 21 C 6191, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023). The Court ruled in that case that "Barnes's theory of injury holds water even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene." *Id.* at *5 (quoting *Barnes v. Unilever U.S. Inc.*, No. 21 C 6191, 2022 WL 2915629, at *1 n.1 (N.D. Ill. July 24, 2022)). But in *Barnes*, the Court placed particular emphasis on the latent effects of the alleged contaminant. *Id.* ("This is particularly so in view of the fact that benzene is contended to be a carcinogen and a substance that lingers in the human body, affecting several organs and 'causing cells not to work correctly.'"). The plaintiffs in *Barnes* also provided factual support to substantiate the alleged risk of contamination, including that benzene

was detected in a majority of over a hundred product batches tested. *Id.* at *1. With these allegations, it was plausible that the plaintiffs in *Barnes* had purchased products contaminated with benzene. *See Fishon v. Mars Petcare U.S., Inc.*, 501 F. Supp. 3d 555, 565 (M.D. Tenn. 2020) (holding that the plaintiffs alleged an injury in fact where they alleged that test results confirmed the presence of unwanted ingredients in the defendant's products, and "there [wa]s nothing in the [c]omplaint to suggest that only *some* of" the products contained the unwanted ingredients, so a "fair reading" of the complaint was that *all* the products contained the unwanted ingredients, including the plaintiffs' purchased products); *cf. Agee v. Kroger Co.*, No. 22 C 4744, 2023 WL 3004628, at *5 (N.D. Ill. Apr. 19, 2023) ("[B]ased on the FDA report and peer-reviewed study referenced in Agee's complaint, it is plausible to infer, at least for purposes of a motion to dismiss under Rule 12(b)(6), that Kroger's lidocaine patches routinely fail to adhere to the body for the promised length of time.").

The same thing cannot be said for Willoughby's allegations in this case. First, she has not alleged any facts regarding the percentage of products or lots sold by Abbott that were contaminated. *See Wallace*, 747 F.3d at 1030–31 ("As we cannot discern from the complaint how many packages were tainted with non-kosher beef, it is unclear whether even a bare majority of Hebrew National packages were not kosher."). Thus, "it is pure speculation to say the particular [products] sold to the consumers were tainted by [bacteria], while it is quite plausible [Abbott] sold the consumers *exactly what was promised*." *Id.* at 1031. Moreover, Willoughby has not alleged that there are any latent effects from the sort of bacterial contamination she posits. This further differentiates this case from *Barnes*, in which the contaminant was a human carcinogen

whose effects might not be noticed for years. Here, none of the plaintiffs have yet experienced any symptoms even though the most recent purchase date alleged by any plaintiff is nearly four years ago, in July 2019. On this backdrop, there is no plausible inference that the plaintiffs are at risk of latent effects from bacterial contamination. Lastly, Willoughby has not even alleged that the products she purchased were manufactured at the Sturgis facility, the only facility alleged in the complaint to have unsanitary conditions. This further reduces any plausibility that the purchased products were contaminated.

In sum, at least with respect to the alleged unsanitary conditions, Willoughby received exactly what she contends she bargained for: safe infant formula. Indeed, if Willoughby's standing contention were sufficient, any purchaser of a good that functioned precisely as expected without any risk of future harm could bring suit if they later discovered undisclosed information, even if it only affected others. This would stretch "[t]he general rule . . . that plaintiffs must allege their own injuries to establish standing" too far. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020).

For these reasons, Willoughby does not have standing based on this theory of harm. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (declining to "push this theory beyond its current scope," which has "been adopted by courts only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect"). She therefore may not pursue claims based on alleged unsanitary conditions. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed

10

in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").

### 2. Heavy metals

A different result is warranted for Willoughby's heavy metals claims. Under this theory of harm, Willoughby contends that she lost the benefit of the bargain because the products "contained (or had a material risk of containing) Heavy Metals." Consol. Am. Compl. ¶ 37.

Willoughby's allegations regarding heavy metals are similar to those the Court found sufficient in *Barnes*. *See Barnes*, 2023 WL 2456385, at *5. As in *Barnes*, Willoughby alleges that the effects of heavy metals are latent. *See, e.g.*, Consol. Am. Compl. ¶ 74 ("[T]he risk [heavy metals] pose grows over time and can remain in one's body for years."). Willoughby also alleges that testing on five types of Abbott's Similac infant formula products confirmed the presence of heavy metals in every product tested. Furthermore, Willoughby's complaint points to several reports and studies identifying heavy metals in baby foods. Because Willoughby has plausibly alleged that at least most of Abbott's products contained heavy metals, it follows that she has plausibly alleged that the products she purchased contained heavy metals. Indeed, although Abbott contests the plausibility of this inference, it argued at the motion hearing and in its supplemental brief that heavy metals cannot provide a basis for a claim because *all* (or at least most) products contain heavy metals.

The Court thus concludes that Willoughby has plausibly alleged that she purchased products containing a defect, namely, heavy metals. *See Lewert*, 819 F.3d at 967–68 (holding that "allegations of standing," like other factual allegations, are

accepted as true for purposes of a motion to dismiss once they "cross the line from conceivable to plausible" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) ("[T]he DCA's press release asserted that the mislabeling by Whole Foods was 'systematic' and 'routine,' and a facial attack on the pleadings is not the proper stage to determine whether the DCA's sampling methods justified its declaration of widespread overcharging.") (alterations accepted).

Abbott contends that even if all the products contained heavy metals, Willoughby has not alleged a cognizable economic injury because the products did not contain a hazardous level of heavy metals. Abbott argues that the heavy metal levels reported in the complaint would be lower if the prepared formula, which is diluted with water, were tested, rather than the powdered formula. At these lower levels, Abbott contends, its products contain heavy metals in quantities significantly below the FDA's guidance for analogous products and cannot cause harm.

Abbott's contention raises a factual dispute regarding the level at which heavy metal contamination in food products intended for infants becomes dangerous. Willoughby alleges that there is no safe level of heavy metals in infant formula, citing several studies and reports. Because Abbott is bringing only a facial challenge to standing, the Court must take Willoughby's well-pleaded factual allegations as true at this stage. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). Willoughby's allegations that heavy metals are harmful even at low levels is plausible. Indeed, the FDA's January 2023 draft guidance that Abbott cites supports Willoughby's allegations by stating that "even low-level chronic exposure can be

hazardous over time" and that "[n]o safe level of lead exposure has been identified for protecting children's health." Def.'s Suppl. Br. Ex. 1 at 4–5. Abbott's contention that the FDA's guidance allows for higher levels of heavy metals in some products may be evidence that the level of heavy metals in its products is *in fact* not hazardous, but that is not dispositive of the standing inquiry at the motion to dismiss stage. The same is true for the other asserted facts Abbott references in its briefing, such as the levels suggested in proposed legislation and the FDA's statements about the risks of heavy metals.

In sum, because Willoughby has plausibly alleged a uniform defect—the presence of heavy metals—in Abbott's products, Willoughby has standing for her heavy metals claims under *Aqua Dots* from her loss of the benefit of the bargain. *See Aqua Dots*, 654 F.3d at 750–51.

### 3. Injunctive relief

Abbott contends that Willoughby does not have standing to seek prospective injunctive relief. As indicated earlier, standing must be established for each type of relief sought by a plaintiff. *See TransUnion*, 141 S. Ct. at 2208.

Willoughby contends that she has "allege[d] an impending future harm" by alleging that they "would be willing to purchase Similac® products in the future if [they] could be certain that they were safely manufactured and do not contain (or have a material risk of containing) Heavy Metals." Pls.' Resp. Br. at 21 (quoting Consol. Am. Compl. ¶¶ 37, 40, 43, 46, 49, 52, 55, 58). This argument is foreclosed by *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). As the Seventh Circuit held in *Camasta*, Willoughby is "now aware of [Abbott]'s sales practices," so she is "not likely

to be harmed by the practices in the future." *Id.* at 740–41 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.") (citing *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)); *see also Barnes*, 2022 WL 2915629, at *2. Indeed, Willoughby's allegation confirms that she is now aware of the alleged omissions and will not be harmed by them in the future. Willoughby accordingly lacks standing to pursue prospective injunctive relief.

## B. Primary jurisdiction

Abbott also contends that Willoughby's heavy metals claims should be dismissed under the primary jurisdiction doctrine. Both parties provided supplemental briefing addressing the FDA's "action plan," named *Closer to Zero*, to reduce "toxic elements, including lead, in foods over time." Def.'s Suppl. Br. Ex. 1 at 3. As part of *Closer to Zero*, the FDA provided draft guidance in January 2023 on the levels of lead at which the FDA "may regard a food as adulterated" in processed baby food. *Id.* The draft guidance does not apply to infant formula. *Id.* at 3 n.2. The "draft guidance, when finalized, will represent the current thinking" of the FDA, but will "not establish any rights for any person and is not binding." *Id.* The guidance also does not address product labeling.

"'Primary jurisdiction' is a permissive doctrine that applies when resolving a claim 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invs., LLC*, 828 F.3d 587, 592 (7th Cir. 2016) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956)). "[T]he question is whether the reasons for the existence of the doctrine are present and

14

whether the purposes it serves will be aided by its application in the particular litigation."

*Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991) (quoting *Western Pac. R.R. Co.*, 352 U.S. at 64).

Both parties refer to the following factors set out in *Gilmore v. Southwestern Bell Mobile Systems, L.L.C.*, 210 F.R.D. 212 (N.D. Ill. 2001), for determining whether to apply the primary jurisdiction doctrine:

> (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense.

*Id.* at 221. Abbott contends that each factor weighs in favor of dismissal. It primarily argues that the FDA has particular expertise in determining what amounts of heavy metals in infant formula is harmful and is currently considering the issue, which involves a "nuanced policy assessment." Def.'s Opening Mem. at 31. Willoughby contends that the primary jurisdiction doctrine is inappropriate in this case because "action on heavy metals is likely at least years away," and federal courts, not the FDA, determine "[w]hether material omissions in the inducement of a consumer product purchase violated state law." Pls.' Resp. Br. at 24–26.

The Court agrees with Willoughby and declines to apply the primary jurisdiction doctrine in this case. First, Willoughby seeks monetary damages, which the FDA could not provide. *See Ryan*, 935 F.2d at 131 ("[H]ers is a claim that seeks only monetary damages, and as both parties agree that the EPA cannot provide the plaintiff with any

15

form of compensatory or punitive damages, we fail to understand what role the EPA can play in this suit nor has the district court given this court any reason to rule otherwise."). Abbott contends that the parties could "return to court for the resolution of any remaining issues," such as damages. Def.'s Reply Br. at 14 (quoting *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004)). But "judicial economy will be better served by allowing the plaintiff the opportunity to recover damages if she is entitled to any from the only forum that can provide them, the court." *Ryan*, 935 F.2d at 132.

Second, Willoughby's "suit does not rely on federal law, but alleges . . . independent state law cause[s] of action." *Id.* As in *Ryan*, Willoughby's state law claims "are not dependent on any [FDA] provisions," and Willoughby "is not required to prove" any violation of the FDA's regulations "in order to prevail on her complaint." *Id.* Although Abbott contends that "whether the levels of heavy metals at issue present a meaningful health risk" is within the FDA's field of expertise, Def.'s Opening Mem. at 29, Abbott does not dispute that any guidance from the FDA would be neither binding nor retroactive. Thus, even if the FDA ultimately provided guidance on this issue that favored Abbott, "such a showing would not be dispositive." *Ryan*, 935 F.2d at 132. Rather, it would simply provide evidence regarding the health risk of heavy metals that, presumably, Willoughby will contest. Similar disputes "are regularly decided in the courts." *Id.* ("For instance, there are thousands of state and federal tort cases brought each year alleging an automobile design or safety defect that are decided in the courts and not by the National Highway Safety and Transportation Board."). Staying the case under the primary jurisdiction doctrine, therefore, would result in needless delay. *See Local 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 686 (1965)

16

("[T]he doctrine of primary jurisdiction is not a doctrine of futility; it does not require resort to an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency.") (internal quotation marks omitted).

Lastly, the FDA has not provided a timeline for addressing infant formula and is already behind its initial proposed schedule for providing guidance for levels of heavy metals in other baby foods. Therefore, applying the primary jurisdiction doctrine in this case would likely lead to "substantial delay and added expense." *Gilmore*, 210 F.R.D. at 221; *see also Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 571 (N.D. Ill. 2021) ("[T]he uncertainty about when the FCC will issue its guidance . . . weighs heavily against staying these proceedings.").

For these reasons, the Court declines to dismiss or stay Willoughby's heavy metals claims under the primary jurisdiction doctrine.

## C.    Rule 9(b)

Abbott contends that Willoughby has not satisfied Federal Rule of Civil Procedure 9(b), which it argues applies to all of her claims. *See Camasta*, 761 F.3d at 737 ("[A] claim that sounds in fraud—in other words, one that is premised upon a course of fraudulent conduct—can implicate 9(b)'s heightened pleading requirements.") (internal quotation marks omitted).[1]  Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."  Fed. R.

---

[1] Willoughby disputes that Rule 9(b) applies to her implied warranty claims.  The Court need not decide this issue because it holds that Willoughby satisfies Rule 9(b) in any event.

Civ. P. 9(b). "Specifically, the complaint must identify the 'who, what, when, where, and how' of the alleged fraud." *Vanzant*, 934 F.3d at 738.

First, Abbott argues that not all the plaintiffs alleged when and where they made their purchases.[2] Abbott does not dispute that Willoughby and McNealy alleged these facts. *See, e.g.*, Consol. Am. Compl. ¶ 36 ("From May to July 2019, Plaintiff Willoughby . . . purchased the Infant Formula for her children from a Jewel-Osco Grocery Store in Palatine, Illinois, during that approximate applicable limitations period."). Abbott instead emphasizes that other named plaintiffs provide less detail. *See, e.g.*, *id.* ¶ 42 ("Plaintiff Doxie purchased the Infant Formula for her child from retail outlets such as Target, CVS, Rite Aid, Walmart, and Amazon during and within the applicable limitations period."). But Rule 9(b) does not require plaintiffs to provide "the precise date, time, and location." *Camasta*, 761 F.3d at 737; *see Vanzant*, 934 F.3d at 739 (holding that the plaintiffs' allegations that they purchased the products "at PetSmart in February 2013 and thereafter" and "from PetSmart in November 2013 and thereafter" were sufficient to allege "the 'when' and 'where' of the fraud"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("[B]ecause courts and litigants often erroneously take an overly rigid view of the formulation, we have also observed that the requisite information . . . may vary on the facts of a given case.").

---

[2] Abbott also contends that Willoughby failed to allege that the products she purchased were manufactured at the Sturgis facility. Because the Court has held that Willoughby does not have standing to assert her claims regarding the bacteria-related sanitary conditions at the Sturgis facility, the Court need not address Abbott's Rule 9(b) argument related to the same claim.

Abbott also contends that Willoughby failed to allege that she saw any alleged misrepresentations on Abbott's website. Willoughby clarifies in her response brief that she is only bringing claims based on alleged omissions, not misrepresentations. *See* Pls.' Resp. Br. at 31 ("Defendant misconstrues Plaintiffs' allegations which are based not on misrepresentations but *omissions*.").

## D. Fraud claims

Abbott contends that Willoughby's fraud and statutory consumer protection claims fail for several reasons.

First, Abbott argues that Willoughby has not alleged actual damages "[f]or the same reasons discussed" in Abbott's standing contentions. Def.'s Opening Mem. at 35. For the same reasons the Court held that Willoughby has standing to bring her heavy metals claims from her loss of the benefit of the bargain, the Court also holds that Willoughby has sufficiently alleged actual damages. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" (quoting *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 628, 888 N.E.2d 1190, 1197–98 (2008))); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 653, 762 N.E.2d 1, 10 (2001) ("Illinois courts have generally allowed damages claims based on diminished value of a product regardless of whether it has yet malfunctioned, provided the product contains a manifested defect or current condition affecting value."); *Barnes*, 2023 WL 2456385, at *4 ("Barnes has sufficiently alleged actual damages by alleging that she 'paid a higher price' because the products were 'something less than [she] expected.'" (quoting *Vanzant*, 934 F.3d at 739)).

19

Second, Abbott contends that Willoughby has not sufficiently alleged that any of its statements were false or misleading.  Willoughby contends that Abbott's statements that its products "nourish the journey of parents and their babies" and that "parents 'can be confident in the nourishment of Similac'" could reasonably be construed "as statements of fact that Similac products are healthy and safe."  Pls.' Resp. Br. at 32 (quoting Consol. Am. Compl. ¶¶ 13, 115).  But even if Willoughby's interpretation of these statements were correct, these statements are from Abbott's website.  Willoughby disavowed any claims arising from website statements in response to Abbott's argument that Willoughby failed to allege that any plaintiff read the website before making their purchases.  *See* Pls.' Resp. Br. at 31–32 ("Plaintiffs' main claims are based solely on the Omissions from Defendant's product packaging – not about Abbott's website.").  Furthermore, in response to Abbott's contention that Willoughby does not allege that the statements identified in her complaint are false, Willoughby reaffirms that her claims "are based on Omissions."  *Id.* at 33.  Thus, any claims are dismissed to the extent they are based on alleged misrepresentations on Abbott's website.

Abbott contends that Willoughby's omissions claims fail because it was under no duty to disclose.  Willoughby argues that the analysis of this issue depends on state law.  For each relevant state, Willoughby explains how each plaintiff's allegations satisfied the duty, where it exists.  Abbott does not contest that this issue varies across states, yet it never provides a state-specific analysis.  This amounts to forfeiture, for purposes of a motion to dismiss, of any argument that Abbott did not have a duty to disclose under the laws of a particular state.  *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Seventh Circuit precedent is clear that perfunctory and

undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted).

In contending that it did not have a duty to disclose under any consumer protection statute, Abbott primarily relies on *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861–65 (9th Cir. 2018). The Ninth Circuit held in *Hodson* that the defendant did not have a duty to disclose "the existence of slave or child labor in [its] supply chain" because it did not "affect[] the product's central function." *Id.* at 864. Accepting Willoughby's allegations regarding the effects of heavy metals as true, as the Court must on a motion to dismiss, the presence of heavy metals *would* affect the infant formula's central function by making it unsafe to consume. Abbott also does not meaningfully contest that some state consumer protection acts do not require a duty to disclose for omission-based claims. *See, e.g., Rockford Mem'l Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 122, 858 N.E.2d 56, 62 (2006) ("[I]t is unnecessary to plead a common-law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment.").

Abbott also contends that "to give rise to a duty to disclose under a theory of common-law fraud, a (non-fiduciary) defendant must make an express representation that is contrary to the omitted facts." Def.'s Opening Mem. at 37 (citing *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397-98 (7th Cir. 2009)). *Crichton* does not go quite so far, holding instead that "a duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton*, 576 F.3d at 398. Willoughby contends that Abbott's omissions of heavy metals rendered its

"prior statements regarding the content and quality" of its products misleading.  Pls.' Resp. Br. at 35.  Moreover, Willoughby argues that a duty to disclose exists in some states where one party "has special knowledge of material facts to which the other party does not have access."  *Id.* (citing *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 812 (Minn. Ct. App. 2010)).  Willoughby alleges that Abbott had "exclusive knowledge of . . . the physical and chemical make-up of the Infant Formulas, and whether the ingredients contained Heavy Metals."  Consol. Am. Compl. ¶ 187.[3]  At this early stage, this is sufficient to allege a duty to disclose.  *See In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 828 (N.D. Ill. 2016) (holding that some plaintiffs alleged a duty to disclose where they alleged "that [the defendant] was in the unique position of having information not readily ascertainable to customers about the alleged hidden defect, and based on the latent properties of the alleged defect, a reasonable inference exists that it is not one readily ascertainable to customers").

## E.    Implied warranty claims

Abbott contends that Willoughby's implied warranty claims fail because the products were merchantable, Abbott did not receive pre-suit notice, and Willoughby failed to allege privity.  The Court addresses each contention in turn.

---

[3] Abbott contends in a footnote that it does not have exclusive knowledge because "the ubiquity of heavy metals in the food supply is a matter of widespread public discussion." Def.'s Reply Br. at 17 n.17.  This is a factual assertion that is contrary to Willoughby's allegations that consumers do not expect the products to contain heavy metals and could not know that they contain heavy metals without costly and time-consuming testing.  Moreover, the case Abbott cites in support of its contention is inapplicable because it applies New York law, which is not relevant here, and was decided on summary judgment.  *See Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228-LEKML, 2022 WL 991518, at *25 (N.D.N.Y. Mar. 31, 2022).

### 1. Merchantability

The parties agree that "[a] plaintiff who claims a breach of the implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). Willoughby argues that she met this standard by alleging that "the Infant Formula is unfit for infants to consume based on the health risks." Pls.' Resp. Br. at 36 (citing Consol. Am. Compl. ¶¶ 70–111). Abbott contends that Willoughby has not alleged that the formula was unfit for her because she consumed it without issue.

As discussed above, the Court concludes that Willoughby has plausibly alleged that the products she purchased contained heavy metals, which can cause a variety of serious health issues. It follows that she has plausibly alleged the products are unfit for ordinary use.

### 2. Pre-suit notice

Abbott next contends that Willoughby did not provide pre-suit notice. Abbott argues that "[u]nder the Uniform Commercial Code (and each state's implementation thereof), a plaintiff who fails to 'notify the seller of the alleged breach' 'within a reasonable time after he discovers it' is 'barred from any remedy.'" Def.'s Opening Mem. at 39–40 (alterations accepted) (quoting 810 ILCS 5/2-607(3)(a); Mich. Comp. Laws Serv. § 440.2607; Tex. Bus. & Com. Code § 2.607(c)(1); Cal. Comm. Code. § 2607(3)(A); R.R.S. Neb. (U.C.C.) § 2-607). Two plaintiffs, Doxie and Holloway, provided pre-suit notice. The remaining plaintiffs did not. For those two plaintiffs, Abbott contends that the notice was still insufficient because it was sent five days prior

23

to filing suit, which Abbott argues did not give it "a reasonable opportunity to cure any alleged defect." *Id.* at 40 (quoting *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021)).

Willoughby contends that notice is not required in some states, and, where it is required, notice of "its manufacturing processes" and "the Congressional release of findings of the presence of heavy metals in baby foods" is sufficient. Pls.' Resp. Br. at 38 (citing Consol. Am. Compl. ¶¶ 187–189). Abbott does not respond to these arguments on reply. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Although Abbott does address these allegations from the complaint in its opening brief, it only cites to Illinois law to argue that the allegations are insufficient.

To recover for breach of warranty under Illinois law, the buyer "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492, 675 N.E.2d 584, 589 (1996); *see also* 815 ILCS 5/2-607(3)(a). There is an exception where the seller "has actual knowledge of the defect of the particular product." *Connick*, 174 Ill. 2d at 492, 675 N.E.2d at 589. But to meet this exception, Willoughby must allege more than simply that Abbott was generally aware of heavy metals in its infant formula. *See Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 384 (7th Cir. 2003). Allegations that Abbott "knew that its products contained" unwanted ingredients and "therefore knew of the defect" is insufficient to allege notice because the "notice of the breach required is . . . of *buyer's claim* that [the facts] constitute a breach." *Id.* (quoting *Connick*, 174 Ill. 2d at 493, 675 N.E.2d at 590). Willoughby therefore has failed to allege that Abbott had actual

knowledge of the defect and accordingly has not alleged pre-suit notice under Illinois law. *See Agee*, 2023 WL 3004628, at *7.

Although Willoughby argues that the sufficiency of notice is a question for the jury, she fails to cite any Illinois law supporting this proposition. Indeed, under Illinois law, "failure to allege sufficient notice is fatal to plaintiffs' breach of warranty claims." *Connick*, 174 Ill. 2d at 495, 675 N.E.2d at 591. The Court therefore grants Abbott's motion to dismiss Willoughby's claim for breach of the implied warranty of merchantability.

For the remaining plaintiffs, however, Abbott has not cited any cases applying the law of the relevant states nor responded to Willoughby's contention that her allegations suffice to provide notice in those states. Thus, Abbott has forfeited any argument that the remaining plaintiffs failed to sufficiently allege pre-suit notice under the laws of their respective states. *Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) ("Webb has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his reply brief."). The Court accordingly declines to dismiss the remaining plaintiffs' claims for breach of the implied warranty of merchantability based on lack of notice.

### 3. Privity

Lastly, Abbott briefly contends that the plaintiffs from California and Michigan[4] cannot state an implied warranty claim because those states' laws require vertical privity. This is incorrect, and Abbott does not press the issue further in its reply brief.

---

[4] Because the Court has dismissed Willoughby's implied warranty claim for lack of notice, it does not address Abbott's contention that this claim should be dismissed for the additional reason that Illinois law requires privity.

*See Pack v. Damon Corp.*, 434 F.3d 810, 820 (6th Cir. 2006) ("Michigan has abandoned the privity requirement for implied-warranty claims . . . ."); *Farley v. Country Coach Inc.*, 403 F. App'x 973, 977 (6th Cir. 2010) ("[D]icta in recent opinions of the Michigan Court of Appeals reaffirm the *Pack* court's conclusion that implied-warranty claims do not carry a privity requirement under Michigan law, when the plaintiffs in those cases sought only economic damages."); *Warnshuis v. Bausch Health U.S., LLC*, No. 19 C 1454 AWI BAM, 2020 WL 7239588, at *3 (E.D. Cal. Dec. 9, 2020) ("For the implied warranty of merchantability, the vertical privity requirement is excused with respect to manufacturers of foodstuffs and 'medicines.'" (citing *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 607 (1960))).

## F.    Unjust enrichment

Abbott contends that Willoughby's unjust enrichment claims should be dismissed because Willoughby "fail[s] to allege that Abbott breached any legal obligation that it owed to them or caused them any injury whatsoever."  Def.'s Opening Mem. at 42. Because the Court concludes that Willoughby has sufficiently alleged an injury and claims for relief, it overrules this contention.[5]

Next, Abbott argues that Willoughby's unjust enrichment claims should be dismissed because Willoughby has adequate remedies at law.  Most courts in the relevant states hold that unjust enrichment can be alleged in the alternative, though there is some disagreement even within states.  *See Fisher v. Ethicon, Inc.*, No. 20 C

---

[5] Abbott also contends that the unjust enrichment claims based on the conditions at the Sturgis facility fail because it offered a refund.  Because the Court dismissed Willoughby's claims based on alleged unsanitary conditions for lack of standing, it does not address this argument.

1365, 2021 WL 5889522, at *7 (C.D. Ill. Dec. 13, 2021) ("At present, because at least one of its supporting Counts survives, Plaintiff's unjust enrichment persists as a claim in the alternative."); *Phillips v. Caliber Home Loans, Inc.*, No. 19 C 2711 (WMW/LIB), 2020 WL 5531588, at *4 (D. Minn. Sept. 15, 2020) ("[A] plaintiff may plead an unjust-enrichment claim in the alternative to a breach-of-contract claim."); *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("Courts in the Ninth Circuit are divided on how exacting of a standard *Sonner* [*v. Premier Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020)] imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage.").  As this is only a pleading issue that will not affect the scope of discovery, the Court declines to dismiss Willoughby's unjust enrichment claims on this basis.  *See Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2021 WL 963812, at *7 (N.D. Ill. Mar. 15, 2021) ("The Court need not analyze each state's laws.  Other Courts that have confronted this identical argument have refused to dismiss on these grounds at the pleading stage, finding that Rule 8(d)(2)'s permissiveness allows for pleading in the alternative.").

For plaintiff Revord specifically, Abbott contends that her claim fails because Michigan law requires a direct purchaser relationship.  *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) ("[T]o state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and Whirlpool.").  Willoughby does not respond to Abbott's contention, forfeiting the issue.  *See Bonte*, 624 F.3d at 466 ("Failure to respond to an argument . . . results in waiver.").  The Court therefore dismisses plaintiff Revord's unjust enrichment claim.

**Conclusion**

For the reasons stated above, the Court denies defendant's motion to dismiss except with respect to plaintiffs' claims based on allegations of unsanitary conditions, plaintiff Willoughby's breach of the implied warranty of merchantability claim, and plaintiff Revord's unjust enrichment claim [dkt. no. 21]. This matter is set for an in-person status hearing on June 23, 2023 at 9:00 a.m., together with the case management conference set for that time in MDL 3037, Case No. 22 C 4148 (N.D. Ill.) A joint status report in the present matter is to be filed on June 16, 2023.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 22, 2023